Good morning. Good morning. James Kienle for Plaintiff Appellant Jennifer Kott, Your Honors. I'll monitor my own time and I'm going to reserve about three minutes. Great. The court should overturn the district court's disposition of the party's cross motion for judgment and the claims administrator's determination that Ms. Kott was not totally disabled within the meaning of the plan because the evidence in the administrative record at the time those claims and appeals were decided supports only one conclusion, which is that Ms. Kott was severely restricted. Let's assume we agree with you on this argument. If we reverse, what happens then? Does this go back to whom? Well, I think ultimately it goes back to the plan administrator with an order to pay benefits through, at a bare minimum, March 1, 2016, which was the last date that the podiatrist indicated he had records available for review, but really more realistically through May 2016, which is when the IME physician had concluded that a return to full-time work might be possible. But that would be with a remand to conduct further administrative procedures consistent with the terms of the plan. That is that it's the claims administrator's job in the first instance to apply the plan's procedures and to permit the plaintiff the opportunity to submit evidence in support of her claim. So basically, if we were to agree with you and we said, you know, you made these three errors, check this out, that's what would happen then, right? That's what we think would happen. Counsel, so if we agreed with you that there should have been benefits paid for some time in the spring of 2016, but that we disagree with your claim of procedural error and find that there was no abuse of discretion in denying disability benefits after whatever that period is, then would the only remand be to pay these benefits for this period? Well, no, I don't think so, Your Honor, because in finding that benefits were due for any disputed period of time necessitates a finding that the plan administrator abused its discretion when it made those decisions, and the remedy for that abuse under this Court's precedence would simply be a remand to the plan administrator with orders to apply the plan terms, and the plan terms would permit Ms. Cott to submit new evidence. What case says that? SAFL, the VCR at Pacific. Your view is that that case stands for the proposition that we can't simply say you should pay for this period of time but find that the plan administrator didn't abuse its discretion in a finding that she would have been fit for work after an April date or a May date? No, it doesn't stand for the latter part of that proposition. It stands for the finding that if you find that the plan administrator who has discretionary authority has abused their discretion, that the court should not stand in for the plan administrator and do the work of applying the plan terms necessarily, that the court should most likely remand the case to the plan administrator with instructions to comply with the plan terms. That's both SAFL and it was also the Court's reasoning in Pannebecker, which is a long-term disability case as well, and that's the remedy for abuse of discretion. Now, one problem in this case is that the administrative record cuts off when they deny the appeal in April 2016. And obviously, Ms. Cott's medical history has developed significantly since then. And so one of the things we are trying to achieve for Ms. Cott in this case is the opportunity to get back into this claim and prove up her disability in a way that would be more thorough than she did on her own when she was not represented. Kagan. So once you go back with a directive to comply with the plan administrator to comply with the plan terms, then that would necessarily lead to another hearing where you can then present current medical evidence? Yes, because it would be a finding by the court that the plan administrator had not complied with the plan terms and denied the benefit claim, and an instruction to open that claim up. And then the plan terms themselves have a claims procedure, and ERISA, of course, provides background law for what constitutes a fair claims procedure that would permit the claimant to submit additional evidence supporting her ongoing disability. Even if that disability didn't exist at the time the metastatic disease from which she now suffers didn't exist or hadn't even been diagnosed at the time of the original plan decision? It would be the plan administrator's job to make that decision in the first instance. That is, it's the plan administrator's job to look at that evidence and decide, does this relate to the disability that you had in February and March and April of 2016? And maybe the conclusion is not. And there's going to be other evidence as well. I mean, you can see from the Social Security opinion, Ms. Cott returned to work after her claim was denied, and it failed, but that's going to affect the administrator's analysis as well. None of that's in the administrative record, though. So it's the plan administrator's job in the first instance to look at the evidence and apply it to the plan terms. Counsel, what role, if any, should the determination by the Social Security Administration that Ms. Cott's entitled to Social Security disability benefits play? In this court's review, it should simply be used to show that one of the factual bases of the district court's opinion is no longer true, and that's contrary to basic sort of principles of the administration of justice. It should not be used, and it's not our position that it should be used, to find that the plan administrator abused their discretion, because obviously it was not before the plan administrator, when they reviewed the claim and appeal. Was the Social Security determination, did that occur after the plan administrator made its determination? Yes, it did. In fact, not only after that, but after the entire trial of this case in the district court. And so it was never considered at all by the plan administrator. It is our position that under Montour, this court's case, the plan administrator would have to think about it on remand. That is, it is one of the pieces of evidence Ms. Cott would submit to the plan administrator to support her ongoing claim, if she made one. I was going to say, admittedly, the plan administrator was not aware of it at all. It hadn't occurred yet, but it's so hard to get benefits under the Social Security Disability Administration. I would think that would be one factor to be considered. But since we're talking about an earlier period, what role would it play even now, were we to send it back? Certainly. Well, one thing the Social Security judge found was that Ms. Cott's complaints about pain were justified by the objective medical evidence. And that is very relevant to her claim in 2016 that she's disabled by foot and back pain. The administrative law judge agreed that she had very credible accounts of pain, that the objective medical evidence was consistent with them. So there is relevant material, even to the decision Cedric made on the current record. And then I do believe Cedric would have to, if there's still the claims administrator, which I don't actually know, but the current claims administrator would have to take into account the full findings of the administrative law judge. Although the claims administrator retained a number of experts who issued opinions that made it clear that at least at some point in time your client was not totally disabled. The claims administrator consulted with four medical experts. One was the IME provider. He commissioned the IME. And the IME provider is the doctor who said four hours of work per day maximum, 20 minutes max sitting in a row, which adds up to two hours and 40 minutes of seated work. They also retained the podiatrist. He did a file review. And it was their podiatrist who concluded no standing work duties at all during this period of time. And they also retained two other physicians to do file reviews, the Klingbeil report and the Marty Davis report, both of which we think are just very unpersuasive. They don't address the contrary findings of the examining physicians. And Dr. Marty Davis is the doctor who claimed to speak with the treating physician, which clearly did not occur. When you add the testimony of the podiatrist, it's almost impossible to comply with both, is it not? Exactly. That's why it's disabling. She cannot simultaneously comply with a severe restriction on her seated work capacity and a severe restriction on her standing work ability. And I'll reserve the balance of my time if there are no further questions. Okay. Very well. Good morning, counsel. Good morning. Clarissa Kong for Agilent Technologies, Inc., Disability Plan. May it please the Court. The question for the Court today is whether Sedgwick abused its discretion when it denied the appeal of Ms. Cott as of April 2016, based on the record that was before Sedgwick at the time. The answer to that question is no, Sedgwick did not abuse its discretion. Sedgwick reached a reasonable conclusion based on the record before it that withstands the abuse of discretion standard. Under the terms of the plan, Ms. Cott needed to be totally disabled, meaning continuously unable to perform any occupation for which she was qualified. Counsel, I realize there's a mass of information about this, so I hope you'll forgive me to look at my notes here because some of this is medical in nature, and I don't know this off the top of my head, but I want to state it accurately. As I understand it, when Sedgwick initially denied her claim, it pointed to a lack of objective medical evidence in the form of, in quotes, no tenderness to palpitation over the COCCYX, and, in quotes, no gait alteration or any focal weakness in lower extremities, not on physical exam. But in response to that, she sent supplemental medical records from Dr. Marcy Davis, who found tenderness at the COCCYX and noted significant guarded gait, which controverted Sedgwick's finding. At that point, she also provided additional physical records, including visits to Dr. Lowe, visits to a pain specialist, Dr. Galtz, to discuss continued back and foot pain, and a completion of a chronic pain management program. And yet Sedgwick denied her appeal, saying that there was, in quotes, no substantive physical findings or abnormalities to support your inability to perform any occupation. Now, those are mutually inconsistent. They got some evidence from these people that I just quoted, and yet you said there was no evidence provided to that effect. Isn't that an abuse of discretion? No, Your Honor. Let me correct some of the factual issues. Dr. Marty Davis was a reviewer that Sedgwick retained for the appeal. Dr. Marty Davis did state that there was some tenderness at the COCCYX. Dr. Marty Davis also opined that the conditions that Ms. Cott had were not sufficient to render her unable to perform any work in any occupation. Dr. Lowe's records show, as we point out in our briefs, that in a treating physician statement, that he provided specifically on the any occupation period for benefits, that he was expecting a marked or fundamental change in Ms. Cott's condition, where she could return to perform duties in her own job, as well as other jobs, within three to six months. Three months from November is February 2016. But, counsel, aren't there treating physician and expert physician reports when taken together that demonstrate that for a period of at least several weeks the claimant was totally disabled because of an inability to comply with both sitting and standing requirements at the same time? No, Your Honor. When you look at Dr. Klingbell's report, she was the doctor that decided or that opined on the initial claim denial. And you look at Dr. Marty Davis's three reports on appeal, they both say that Ms. Cott is able to work in any occupation, and indeed her own as well, as of February 10, 2016, without any restrictions. But, counsel, I guess perhaps my colleague and I have the same question. There's no question that Cedric's own physicians say something different. That happens all the time. But under the plan, you're obligated, Cedric is obligated, to respond to and address the claims that are made, in this case, by Cott. I don't find where they did that. I've got other ones later, but right now the ones I just mentioned, I don't find a response that gave her an opportunity to respond to the response. They just basically ignored it. Am I missing something? Your Honor, we believe that Cedric did respond. They looked at the record in its totality. Well, the record that you're referencing, was that the November 2015 record by Dr. Lowe? Correct, there is that record. They talked about the prognosis that she's likely to be able to recover in three to six months, but that same record also says that slow improvement may occur. So you kind of have to look within the context of, yes, there's this projection, but at the same time, progress may not happen as expected. So I think that isn't that a misreading of Dr. Lowe's record by Cedric? Your Honor, I don't believe that it is. If you look at the form, there are two sections to it. One relates to Ms. Cott's own occupation. The second part relates to any jobs or other jobs. And Dr. Lowe's statement with regard to slow improvement may occur relates to whether or not Ms. Cott could go back to her own job. The second part of the form, which relates to other jobs, does not have that qualifying statement. It also shows that Dr. Lowe had initially checked the box for one to three months, crossed that out, put three to six months as the date when a change was expected to occur where she could recover sufficiently to perform duties. Counsel, I'd like to ask you the same question I asked opposing counsel. If we were to disagree with you with regard to some finite period in February or March and find that Cedric abused its discretion in failing to provide benefits for that period, would there need to be a remand for anything other than directing the payment of benefits for that period, as opposing counsel has said? The SAFL case that my colleague had cited to does talk about a remand to the district court with instructions with regard to sending it back down to the plan administrator. I do believe that it does need to go to the district court. Although this court looks at the district court's decision on the law de novo, the district court's decisions with regard to findings of fact, which occurred here, where we had cross motions on Rule 52, that the decisions on findings of fact are treated with the clear error standard. I believe that the district court should be given the opportunity to revisit this case if this case were remanded by this court. Let me shift the time period a little bit. As I understand the record, at some point you've got two different doctors. I think it's Lowe and Taubin, that seem to be making mutually inconsistent recommendations. One says that she should not sit for longer than 20 minutes at a time, while the other one says she can't stand. How do you do that? I think you have to look at the time period of those various reports. It can't occur at the same time, and you apply with both physicians' statements, right? Yes, but those are not the facts before the court. Dr. Lowe's statements with regard to sitting and standing from notes in October of 2015 were confirmations that Cedric obtained based on the IME's assessment. That was for Ms. Cott's own occupation period. You also have under review here in this lawsuit is the benefit period that was after that. It was for the NE occupation period. Dr. Taubin's reports were done on appeal in March of 2016. Dr. Taubin's reports take into account notes from Dr. Lowe that provide some perspective on the plantar fasciitis, the foot pain. And Dr. Taubin's report, the March 31st report, states that Ms. Cott would be able to perform duties in any occupation for which she was qualified. However, she must do so in a seated position. At that point, there is no condition. No one is opining on her ability to sit and stand. At that point, the only condition that seems to be at issue is plantar fasciitis. Okay, so let me be sure I understand. Are you saying that what seem to be mutually inconsistent recommendations, i.e., she can only sit for 20 minutes at a time but she can't stand, is solved by the fact that that has to do with her particular profession. We're not talking about any profession, and those are not necessarily a contemporaneous requirement. Is that what you're saying? Correct, Your Honor. Looking back at Dr. Matteretti's IME that was done in October of 2015, that was done for an assessment of whether Ms. Cott could perform her own job. And also, I wanted to note that Dr. Matteretti had opined that she could go back to work with restrictions as of November 2015 to her own job. The report further goes on to state that Ms. Cott is expected to be able to go back to work full-time within six months. There is a statement towards the end, and this is at SER 29, where Dr. Matteretti opines return to full-time work should occur after her fracture is fully healed. There's some talk in the report about a potential coccyx fracture. Four days later after that report, there is an X-ray in the record, and it's at SER 68, where the X-ray of the coccyx is showing that there is no fracture. So piecing that X-ray with Dr. Matteretti's opinion as to her ability to go back to work when her fracture is fully healed, where she has no fracture, it would be reasonable for Sedgwick to conclude that she could go back to work at that time. Can I change the focus for just a minute here? As you know, in these kinds of cases, there are different levels of review, different standards of review, depending on whether Sedgwick is conflicted in this case. What is the level, what's the standard of review that we apply to the findings of the finder of fact or the plan administrator? Do we review it with a jaundiced eye, with some suspicion, or is it just a plain abuse of discretion type standard? It's a plain abuse of discretion standard. There is no conflict of interest here of the sort that the Supreme Court raised in MetLife v. Glenn. So Sedgwick doesn't get more money if it doesn't pay out as much? Correct. So the plan is self-funded, meaning that Agilent Technologies Inc. is the financial source for the plan. Sedgwick is hired as a claims fiduciary, deciding claims. And if Sedgwick decides cases that tend to deny more of the, if you will, the companies, not Sedgwick's, but the hiring company's people so that they don't have to pay out as much, do they get to keep their money? Does Sedgwick get more money? In other words, who benefits financially if these claims are denied? That's not part of the record, Your Honor. And in a third-party administrator situation, the administrator is paid a fee not based typically on whether or not they're denying claims. That was not an allegation made by a plaintiff in this case. They don't get more fees? They don't get more business? No, Your Honor. In fact, the claims regulations frown upon that. And the claims regulations that I'm referring to are the ones that are. So I mentioned the claims regulations. There are Department of Labor regulations that govern this field, and they're found at 29 CFR 2560.503-1. I'd like to address some of the issues regarding the Social Security Administration, finding the decision of the Social Security Administration that was from September of this year was not just outside the administrative record, but also based on a disability onset date that was after this lawsuit was filed. The disability onset date was July of 2016. It was a different disability than altogether? It is a different combination of medical conditions for which Ms. Cott got Social Security Disability benefits. If you would note, the Social Security Administration decision includes Ms. Cott's cancer diagnosis, which, as we know from the record, occurred in March of 2017, which was after this lawsuit was filed. This is a case about a snapshot in time in April of 2016, where Cedric was deciding the appeal and deciding it based on the administrative record that existed at that time. I think your time is up, unless either of my colleagues have additional questions. Thank you very much. Your testimony is very helpful. I mean, your argument is very helpful. Thank you. Thank you, Your Honor. Counsel, you have a little rebuttal time. Thank you, Your Honor. To start, I wanted to clarify a point about the standard of review and the effect of conflict of interest. There is no what's called a structural conflict of interest alleged in this case between the fiduciary – that is, the fiduciary itself that made the decision does not have a conflict of interest. That does not actually change the standard of review, though. The holding in Glenn – and it's maybe a distinction without a difference, but I do think it's important to point out – the holding in Glenn, the Supreme Court case, and in this Court's subsequent cases in Abatey and Pacific Shores Hospital, Saloma, is that conflict of interest is one factor among many to be evaluated when assessing an abuse of discretion. So the standard of review stays the same. It's abuse of discretion review that takes into account the totality of the circumstances. There just happens to not be a conflict. Like, that's not one of the circumstances in this case. There's nothing in the record about that, right? No. In this case. Counsel, opposing counsel says that if we do decide to remand, we should remand to the district court, not the plan administrator, which seems different from what you told us. Do you agree with her or disagree? No. Actually, I do agree with her that it should be remanded to the district court with instructions to the district court to remand the claim to the plan administrator and to consider plaintiff's request for attorney's fees under 502G, ERISA 502G, that is. So there would need to necessarily be some more procedures in the trial court, I think, before the case gets remanded back to the administrator. And to be clear, I don't know that Cedric is still the claims administrator. That could have changed. So we need to, like, figure that sort of stuff out. One final point that I wanted to make was with regard to the Dr. Lowe attending physician statement, which is where this notion that there was a three- to six-month anticipated recovery window comes from. And the district court and Cedric sort of adopted the most parsimonious possible interpretation of that document. We don't need to speculate what Dr. Lowe's opinion was. Plaintiff attempted to submit evidence, a letter from him, in the course of her motion proceedings from March of 2017, where he put forth his opinions about her work status at that time, and he found that she still had the same limitations he had recommended back in November of 2015. And that should have been admitted. Like, we did not get an opportunity to respond to the additional medical evidence that was generated on appeal. And under Abatey and Saloma, that piece of evidence should have been admitted and considered by the district court, and it was an error not to. And I have nothing further. Any other questions? Thank you, counsel. Thank you all. Thank you, Your Honors. Happy holidays to you all. Happy holidays. Happy holidays. And the case just argued is submitted. The court stands adjourned for the week.
judges: M. Smith, Nguyen, Bennett